2025 IL App (2d) 250037-U
No. 2-25-0037
Order filed May 1, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1781 |
| DONTE M. DURR, SR., | ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release.

¶ 2    Defendant, Donte M. Durr, Sr., appeals from the trial court's order denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes informally called the Pretrial Fairness Act (Act).  See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 15, 2024, the State charged defendant with drug induced homicide (720 ILCS 5/9-3.3(a) (West 2022)) (class X felony). The State also filed a petition for pretrial detention. See 725 ILCS 5/110-6.1 (West 2022). The State alleged that there was probable cause to show that defendant committed the alleged offenses and that his pretrial release posed a real and present threat to the safety of any person or persons or the community. The State also cited defendant's criminal history as additional grounds to deny pretrial release. The criminal history showed that the defendant had previous convictions for domestic battery, unlawful possession of cannabis, and unlawful delivery of a controlled substance. In those cases, defendant had been granted conditional discharge or probation, which had all been terminated unsatisfactorily. Defendant also had a pending charge of criminal trespass to land.

¶ 5      On August 29, 2024, a hearing was held on the State's petition. No report of proceedings is included in the record on appeal, but the record shows that the State tendered the police synopsis, which stated as follows. On December 23, 2023, police were called to an apartment in Elgin for an alleged drug overdose. The caller, Karmelo Chatman, told police that his friend, the victim, Marcel Muyumba, had taken what he believed to be one and a half Percocet pills. At the scene, the victim's cell phone was collected as evidence. The victim was transported to the hospital and pronounced dead about 45 minutes later. The autopsy listed that cause of death as bromazolam and fentanyl intoxication.

¶ 6      A history on the victim's cell phone showed that the victim arrived at the apartment building at about 5:30 p.m. At about 8:30 p.m., a Cash App transaction was sent from the victim to defendant in the amount of $40.

¶ 7 Security camera footage of the apartment building showed that, at about 8:30 p.m., Chatman and the victim left the apartment and entered the sixth-floor west stairwell. A few minutes later, defendant arrived at the apartment building and was seen exiting an elevator and walking to the fifth-floor west stairwell holding a cellular device that was powered on and in use. At about 8:40 p.m., Chatman and the victim exited the sixth-floor west stairwell and went back into the apartment.

¶ 8 During an interview on February 7, 2024, Chatman stated that he and the victim purchased two pills believed to be Percocet from a black male, matching the defendant's description, in the west stairwell on December 22, 2024, between 8 and 9 p.m. Shortly thereafter, Chatman took half a pill and the victim took one and a half pills. Chatman did not see the victim ingest any other narcotics that evening and had been with him continuously since he had arrived at the apartment.

¶ 9 At the scene, Delantia Brown told police that the pills were purchased from a black male who lived on the fourth floor of the apartment building. Brown later called police and stated that the person she thought sold the pills was not in the apartment building at the time of the subject drug sale.

¶ 10 On February 11, 2024, police conducted a traffic stop and defendant was arrested for driving while license suspended and transported to the Elgin jail. During the arrest, police found two cell phones in defendant's pocket, which defendant stated belonged to him. Police confiscated the cell phones as evidence.

¶ 11 On March 3, 2024, Chatman told police that, on the night in question, the victim was calling around to see who had pills. Someone called them back on Chatman's phone and spoke with the victim. That person said he knew who had pills and would go pick them up. The victim arranged for the drug transaction to take place in the west stairwell. Chatman reiterated that the only drugs

the victim had when he first arrived at the apartment building was some "weed." They both smoked the weed and Chatman did not notice anything odd about it.

¶ 12    Chatman was shown a clip of the security video when defendant exited the fifth-floor elevator at about 8:35 p.m. on the day of the drug sale. Chatman said he did not know the person and that the person on the camera was not the one who sold him the pills. Chatman confirmed the drug transaction happened on the fifth-floor west stairwell. Chatman acknowledged that his cell phone was used to arrange for the pill purchase. The police seized Chatman's phone as evidence and obtained a search warrant for the phone. The following was observed on Chatman's phone: between December 6 and 23, 2023, Chatman received seven phone calls from a number registered to defendant and called that number 30 times; defendant's number was assigned the name "Weed Man Downstairs;" Chatman received a text message from defendant at 10:37 p.m., which stated, "Bro make his ass wake up somehow. U got me worried about his ass now we just lost a homie out west on the same shit."

¶ 13    A search warrant for defendant's phone showed that at 7:55 p.m., defendant was located within 600 meters of the apartment building. At 8:23 p.m., defendant was located within 1000 meters of another apartment complex called the "Mills." At 8:48 p.m., defendant was located back within 400 meters of the apartment building. He sent an outgoing text message at 10:37 p.m.

¶ 14    The police received a search warrant for the parent company of Cash App. The Cash App username "saylessdt6" was registered to defendant at an address that matched the apartment building and with defendant's cell phone number. Additionally, defendant received the following Cash App transactions: (1) one from "King" for $40 on December 22, 2023, at 8:37 p.m.; (2) four from Brown between December 1 and 31, 2023; (3) one from Vonkisha Chatman on December 8, 2023; and five from Chatman between December 1 and 31, 2023.

¶ 15     On March 19, 2024, police spoke with Chatman again at his apartment.  Chatman said that the only phone number called from his phone prior to the drug transaction was to the person from whom they purchased the drugs.  Police told Chatman that the only number called from his phone was to defendant.   Chatman did not respond. Police then pointed out that, in the month of December 2023, there were 37 calls between him and another listed as either "Weed Man Downstairs" or "Donte Durr."  Chatman was then shown the security video of defendant walking into the west stairwell and was asked if that was the person who sold the pills.  Chatman responded, "not that I know of."  When asked if there was anyone else in the stairwell, Chatman said there was someone else.  Chatman identified the subject in the video as "Weed Man Downstairs." Chatman denied texting anyone about getting sick after taking the pills.  After further interrogation, Chatman stated that he would "guess" that the victim purchased the pills from defendant.

¶ 16     On August 14, 2024, defendant was arrested and brought to the police station.  After he received Miranda warnings, defendant stated that he visited the apartment building multiple times each week to visit his son.  He thought his screen name "sayless" was his Facebook name, not his Cash App name.  Defendant said he would not sell anything to someone he did not know and that he did not recognize the victim's name.  Defendant refused to say where he got the pills from but stated that he was willing to help if he could speak to a lawyer first.

¶ 17     The record includes the trial court's written order granting the State's petition.  The trial court found that there was sufficient proof that defendant committed a detainable offense, that defendant posed a real and present threat to the safety of the community, and that no condition or combination of conditions could mitigate the threat posed by defendant.  As to committing a detainable offense, the trial court noted that Chatman's phone records corroborated that Chatman and the victim called defendant and purchased two pills for $40, that a text conversation between

defendant and Chatman also corroborated the transaction, and that defendant was pronounced dead due to fentanyl intoxication. As to posing a real and present threat, the trial court noted that defendant had a prior conviction for delivery of a controlled substance and that, in this case, defendant sold pills that he later expressed through text had caused health issues for another person. Finally, the trial court noted that conditions less than detention could not ensure the safety of the community because defendant's criminal history showed a lack of compliance with court orders and sentencing conditions, and electronic home monitoring (EHM) could not prevent defendant from selling controlled substances.

¶ 18 Defendant filed a motion for relief. Defendant argued that there was not sufficient evidence to prove he delivered a pill that contained fentanyl and bromazolam. Further, he did not pose a threat because he was a "hard working peaceable family man with extensive work history, family, and community ties." He argued that detention was excessive because of his lack of any significant criminal history. Defendant noted he had a wife and two children, one of which suffered seizures and needed his father at home for support. Defendant asserted that EHM could mitigate any risk he posed to the community.

¶ 19 On October 30, 3024, following a hearing, the trial court entered a written order denying the motion for relief for the "reasons stated on the record." No report of proceedings is included in the record on appeal. This timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21 All persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 22    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).  "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***."  *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 23    Under the recent supreme court decision in *People v. Morgan*, 2025 IL 130626, ¶ 54, when, as in this case, the parties to a pretrial detention hearing proceed solely on the basis of documentary evidence, and no live testimony is presented, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature."  Under *de novo* review, "we perform the same analysis that the trial [court] would perform using the proper standards."  *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 24    In the present case, defendant did not file a memorandum with this court, choosing instead to stand on the arguments he made in his motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support).  Thus, on appeal we are limited to the arguments made in defendant's motion.

¶ 25    Defendant first argues that the State failed to provide clear and convincing evidence that he committed the charged offense.  Section 6.1(f)(2) of the Act provides that the State "may present

evidence at the hearing by way of proffer based on reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). Further, the evidence required at a detention hearing is less than would be required at trial. *Id.* § 110-6.1(f)(4) (pre-trial detention hearing is not to be used for purposes of discovery, and the post arraignment rules of discovery do not apply); *Id.* § 110-6.1(f)(5) (rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing). As such, the Act requires only that the evidence be reliable, not that it be equivalent to what would be required at trial.

¶ 26 The police synopsis that the State submitted in this case met that standard. There was evidence that a drug deal took place in the west stairwell of the apartment building at about 8:30 p.m. on December 22, 2023. Security camera footage from the apartment building shows defendant, Chatham, and the victim enter the west stairwell a floor apart at about that time. Evidence also showed a Cash App transaction from the victim to the defendant in the amount of $40 at about that time as well. Evidence from Chatman's cell phone showed calls and texts on the night in question to a phone number that matched defendant's phone number. In an interview, Chatman stated that the only phone number called from his phone prior to the drug transaction was to the person from whom the drugs were purchased. This was sufficient to provide clear and convincing evidence that defendant committed the charged offense.

¶ 27 Defendant next argues that the State failed to present clear and convincing evidence that he posed a threat to the community. Defendant argues that he lacks a significant criminal history and that he is "a hard-working peaceable family man" with extensive family and community ties. The record refutes this contention. Defendant's criminal history includes convictions for domestic battery, unlawful possession of cannabis, and unlawful delivery of a controlled substance. All three of those involved sentences of probation and conditional discharge, and all of those were

terminated unsatisfactorily. Further, a public safety assessment report included in the record gave defendant the highest risk rating on scales for new criminal activity and failure to appear. Significantly, a text message from defendant to Chatman on the night in question showed that defendant sold the pills to the victim with knowledge that a previous buyer had died from taking the same type of pill. All of the foregoing demonstrates that defendant poses a real and present threat to the community.

¶ 28    Finally, defendant argues that the trial court erred in finding that no conditions of pretrial release could mitigate the threat he posed to the community. We disagree. The trial court's determination is supported by defendant's criminal history, which included a previous arrest for unlawful delivery of a controlled substance, and that defendant was given the highest rating on the new criminal activity scale. Further, EHM would likely not mitigate any threat defendant poses, because he would be allowed at least two days of movement in the community. See 730 ILCS 5/5-8A-4(A-1) (West 2022) ("[a]t a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities such as those listed in paragraph (A)"). Given defendant's history of not complying with court orders, as demonstrated by his previous failure to abide by conditions of probation and conditional discharge, the State met its burden of showing that no conditions of release could mitigate the threat posed by defendant.

¶ 29                              III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 31    Affirmed.